UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA SUE WILSON,

          Plaintiff,                       CIVIL ACTION NO. 13-10158

        v.                            DISTRICT JUDGE GEORGE CARAM STEEH
                                     MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,
          Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 12, 18)**

Plaintiff Debra Sue Wilson challenges the Commissioner of Social Security's ("the

Commissioner") final denial of her benefits application.  Cross motions for summary judgment

are pending (Dkt. Nos. 12, 18).  Plaintiff also responded to the Commissioner's motion (Dkt. No.

19).  Judge George Caram Steeh referred the motions to this Magistrate Judge for a Report and

Recommendation (Dkt. No. 3).

**I.**        **RECOMMENDATION**

Because the Administrative Law Judge ("ALJ") failed to apply the treating source rule,

this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be

**GRANTED**, the Commissioner's motion for summary judgment be **DENIED**, and the case be

**REMANDED** to the Commissioner.

**II.**        **DISCUSSION**

     *A.*        *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and

Supplemental Security Income are available only for those who have a "disability."  *See Colvin*

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as

the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment, which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months. 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th

Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers

to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## B.      Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court

"must affirm the Commissioner's conclusions absent a determination that the Commissioner has

failed to apply the correct legal standard or has made findings of fact unsupported by substantial

evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)

(internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir.

2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further

administrative proceedings unless the claimant has been prejudiced on the merits or deprived of

substantial rights because of the agency's procedural lapses") (internal quotation marks

omitted)).  Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir.

1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by

substantial evidence, "it must be affirmed even if the reviewing court would decide the matter

differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v.

Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence

standard "presupposes . . . a zone of choice within which the decisionmakers can go either way,

without interference by the courts" (internal quotation marks omitted)).

        When reviewing the Commissioner's factual findings for substantial evidence, this Court

is limited to an examination of the record and must consider that record as a whole.  *Bass v.

McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th

Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been

cited by the Appeals Council." *Heston*, 245 F.3d at 535.  There is no requirement, however, that

either the ALJ or this Court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can

consider all the evidence without directly addressing in his written decision every piece of

evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does

"not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.   REPORT

### A.   *Administrative Proceedings*

Plaintiff applied for supplemental security income and disability insurance benefits on February 6, 2010, alleging she became disabled on September 30, 2006 (Tr. 12).  After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ James J. Kent, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 12-25).  Plaintiff requested an Appeals Council review (Tr. 7).  On October 24, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 4-6).

### B.   *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her alleged onset date in September of 2006 (Tr. 14).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: bulging discs in [her] lumbar and cervical spine (degenerative disc disease); migraines; chronic obstructive pulmonary disease ("COPD"); asthma; obesity; left wrist neuropathy; and, bipolar disorder (Tr. 14).

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 15).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional

Capacity ("RFC") to perform "light work . . . [limited to] simple, routine, repetitive tasks in a work environment free of fast-paced production requirements [which] involves only simple work-related decisions and routine work place changes" (Tr. 18).

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a fast food worker, short order clerk, or assembler-packager (Tr. 24).

At step five, the ALJ found Plaintiff was not disabled, because there are a significant number of jobs available in the national economy that Plaintiff could perform such as general office helper, production inspector, and office/building cleaner (Tr. 25).

### C.    Administrative Record

#### 1.    Plaintiff's Hearing Testimony and Statements[1]

Plaintiff is irritable around people; has asthma; COPD; bipolar disorder; crying spells; anxiety; trouble remembering things; and, experiences feelings of guilt, worthlessness, and hopelessness because she cannot provide for her granddaughter (Tr. 43, 45-46, 49-50). She sometimes becomes overwhelmed going to the grocery store (Tr. 46). In 2006, Plaintiff was laid off from her job at an automotive plant, because she could not lift the boxes, or sit or stand for more than a couple of hours (Tr. 40).

Plaintiff uses an inhaler and a nebulizer for her asthma and COPD; she only has asthma attacks on extremely hot days (Tr. 43). Plaintiff's medication suppresses her appetite and makes her "sleep all the time" (Tr. 43-44, 46). She has good days and bad days, but in the couple of months before the hearing, Plaintiff had only one or two days where she did not feel like doing

---

[1]Plaintiff's testimony before the ALJ reflects her subjective view of her medical condition, abilities and limitations. It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

anything (Tr. 48).  Plaintiff uses a heating pad and lies down to help alleviate her symptoms (Tr. 41).

Plaintiff can only walk a quarter of a mile before she has shortness of breath; she can lift 20 pounds; stand for 15 minutes before her back "goes out"; drive short distances; wash a "few" dishes; sit for 60 to 90 minutes at a time when it is cool outside; but constantly needs to alternate between sitting and standing when it is hot outside (Tr. 40-43, 49, 53).  Plaintiff cannot vacuum, do laundry, or hold objects in her left hand because her wrist cramps up on a daily basis and she drop things (Tr. 42).

### 2.    Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's education and vocational experience who is limited to light exertional work in an environment free of fast-paced production requirements.  The individual is further limited to simple, routine, and repetitive tasks; she can only tolerate simple work related decisions and routine workplace changes (Tr. 53).  The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform work as a general office helper, production inspector, or office/building cleaner (Tr. 53-55).

In a second hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's education and vocational experience who is limited to sedentary exertional work in an environment free of fast-paced production requirements.  The individual is further limited to simple, routine, and repetitive tasks; and, can only lift 10 pounds occasionally, stand for 15 minutes, walk a quarter of a mile, and sit for 60 to 90 minutes at a time.  In addition, the individual can only occasionally reach and handle objects on the left side.  Finally, the individual requires a sit/stand option; cannot be exposed to extreme heat, dust, odors, gases or poorly ventilated areas; must be reminded of tasks up to four times a day; requires a supervisor to check

2:13-cv-10158-GCS-MAR   Doc # 20   Filed 10/17/13   Pg 7 of 14   Pg ID 707

her work up to four times a day; and, can only have occasional interaction with the public and coworkers (Tr. 55-56). The VE testified that such an individual would be precluded from work (Tr. 56).

In a third hypothetical, the ALJ asked the VE to assume the individual would be absent from work multiple days in a week and four to six times a month. The VE testified that such an individual would be precluded from work (Tr. 57).

In a fourth hypothetical, the ALJ asked the VE to assume the individual cannot engage in sustained work activity on a regular and continuing basis (i.e., eight hours a day, five days a week). The VE testified that such an individual would be precluded from work (Tr. 57).

### D.    *Plaintiff's Claims of Error*

Plaintiff challenges the ALJ's evaluation of Fe Fabro Quines, M.D. On February 3, 2011, Dr. Quines opined on the functional limitations that result from Plaintiff's degenerative disc disease, arthritis, and cervical disc disease. Dr. Quines found that Plaintiff:

(1)    has symptoms that would often be severe enough to interfere with the attention and concentration required to perform simple work-related tasks;

(2)    needs to recline or lie down during an eight-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon;

(3)    can walk 20-30 feet without rest or significant pain;

(4)    can sit, stand, and walk 30 minutes at a time for a total of three hours in an eight-hour work day;

(5)    needs a job that permits shifting positions at will from sitting, standing, or walking;

(6)    needs a 5-10 minute unscheduled break every two hours;

-7-

(7)     can occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds;

(8)     cannot grasp, turn, or twist objects with her left hand;

(9)     cannot use the fingers on her left hand for fine manipulation;

(10)    cannot use her left arm for reaching; and,

(11)    would need to be absent from work more than four times a month.

(Tr. 455-456).  Dr. Quines did not indicate the nature, frequency, or the duration of his treatment

relationship with Plaintiff (Tr. 455).  Accordingly, this Magistrate Judge must first determine

whether Dr. Quines qualifies as a treating source, as defined in the Regulations:

> Treating source means your own physician, psychologist, or other acceptable
> medical source who provides you, or has provided you, with medical treatment or
> evaluation and who has, or has had, an ongoing treatment relationship with you.
> Generally, we will consider that you have an ongoing treatment relationship with
> an acceptable medical source when the medical evidence establishes that you see,
> or have seen, the source with a frequency consistent with acceptable medical
> practice for the type of treatment and/or evaluation required for your medical
> condition(s).  We may consider an acceptable medical source who has treated or
> evaluated you only a few times or only after long intervals (e.g., twice a year) to
> be your treating source if the nature and frequency of the treatment or evaluation
> is typical for your condition(s).

20 C.F.R. § 404.1502.  "The question is whether Lian had the ongoing relationship with

Kornecky to qualify as a treating physician *at the time he rendered his opinion*."  *Kornecky*, 167

F. A'ppx at 506 (emphasis in original).

The record shows that before he rendered his opinion, Plaintiff had visited Dr. Quines

from May of 2010 through January of 2011.  On August 10, 2010, Plaintiff complained of back

and neck pain.[2] Dr. Quines referred Plaintiff for an X-ray of her cervical spine and lower back,

and prescribed her medication (Tr. 487). The X-rays were taken on September 10, 2010, and

Plaintiff followed-up with Dr. Quines on October 12, 2010, October 25, 2010, and November 10,

2010 (Tr. 484, 487). On October 25, 2010, Dr. Quines diagnosed Plaintiff with chronic back

pain (Tr. 484); on November 10, 2010, he diagnosed her with arthritis (Tr. 483). In addition,

Plaintiff viewed Dr. Quines as her primary care physician and family doctor (e.g., Tr. 286-292,

294-300, 302). This Magistrate Judge finds that although Dr. Quines "may not be due

controlling deference, and his opinion may be due less weight in light of the short time he treated

[Plaintiff] before rendering it, [] the ALJ should have applied the treating physician rule to

determine how much weight to give the opinion." *Kerkau v. Comm'r of Soc. Sec.*, No. 12-11520,

2013 WL 2947472, at *9 (E.D. Mich. June 14, 2013) (plaintiff saw a doctor two times in less

than a month, but the doctor was following plaintiff's condition closely).

> The Sixth Circuit has instructed ALJs on how to assess opinions from treating sources:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2,

---

[2]Prior visits to Dr. Quines were for knee, shoulder, and ankle pain (Tr. 395-396).

1996).  This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) reh'g denied (May 2, 2013).

Here, the ALJ stated the following regarding Dr. Quines' opinion:

> As for the opinion evidence, in February 2011, Fe Fabro Quines, M.D., opined in a residual functional capacity form submitted to him by [Plaintiff's] attorney that [Plaintiff] had a less than sedentary exertional capacity due to the pain she alleges to feel in her back and neck.  I note that he did not answer the question regarding whether [Plaintiff] was or was not a malinger[sic] and did not provide any information regarding the nature, frequency and length of contact he has had with [Plaintiff].  Further, it is noted that Dr. Quines relied heavily upon [Plaintiff's] subjective reports of pain rather than the mild diagnostic imaging results and was aware of [Plaintiff's] pending claim[] for benefits from this Agency.

> I note that no other medical professional provided a residual functional capacity regarding [Plaintiff's] ability to perform work-related activities.  Thus, I conclude that no other physician believed that any of [Plaintiff's] current complaints are significant enough to render her disabled or warranted the imposition of any exertional or nonexertional work-related restrictions.

(Tr. 21).  The ALJ was required to address whether Dr. Quines' opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and whether it was "consistent with the other substantial evidence in [the] case record" – not whether other medical professionals provided a RFC assessment.  Further, nothing in Dr. Quines' RFC assessment supports the ALJ's finding that Dr. Quines relied on Plaintiff's subjective reports of pain.  And, the ALJ did not explain how the "mild" to "moderate" findings in Plaintiff's cervical and lumbar spines belie the functional limitations reported by Dr. Quines.  *See Paulos v. Comm'r of Soc. Sec.*, No. 12-13390, 2013 WL 4507922, at *5 (E.D. Mich. Aug. 23, 2013).  Finally, the ALJ failed to specify how much weight he afforded Dr. Quines' opinion.  As such, the ALJ failed to provide "good reasons" for rejecting Dr. Quines opinion, and this case should be remanded to

determine: (1) the amount of weight to afford Dr. Quines' February 3, 2011 opinion – using the

standard outlined in *Gayheart*; and, (2) whether Dr. Quines' functional limitations should have

been included in the hypothetical to the VE.

Even assuming that Dr. Quines does not qualify as a treating source, the ALJ still erred.

The Sixth Circuit requires ALJs to assess nontreating sources as follows:

> [O]pinions from nontreating and nonexamining sources are never assessed for
> "controlling weight." The Commissioner instead weighs these opinions based on
> the examining relationship (or lack thereof), specialization, consistency, and
> supportability, but only if a treating-source opinion is not deemed controlling. 20
> C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the
> opinion" may be considered in assessing any type of medical opinion. *Id.* §
> 404.1527(c)(6).

*Gayheart*, 710 F.3d at 376. The ALJ did not discuss the factors outlined in *Gayheart*.

Notably, a review of the ALJ's decision reveals that he based his RFC determination on

the raw medical data, instead of a medical opinion.[3] But, as Judge Walter H. Rice of the

Southern District of Ohio has explained:

> This Court has stressed the importance of medical opinions to support a
> claimant's RFC, and cautioned ALJs against relying on their own expertise in
> drawing RFC conclusions from raw medical data. Moreover, this Court has
> found that an ALJ is not qualified to translate raw medical data, such as MRIs,
> into functional capacity determinations.

---

[3]The only other functional assessments in the record are from Plaintiff's daughter (Tr.
149); and, Jerry Franck, a single decision maker for the SSA (Tr. 449-450) whose RFC was not
entitled to any weight. *Eshelman v. Astrue*, No. 06-107, 2007 WL 2021909, at *3 (D. Me. July
11, 2007) ("the first of the two DDS assessments . . . was completed by a layperson 'Single
Decision Maker.' Thus, any reliance upon it was (and is) misplaced") (internal citation omitted);
*Bergschwenger v. Comm'r of Soc. Sec.*, No. 11-11752, 2012 WL 4009916, at *13 (E.D. Mich.
Aug. 20, 2012) (holding that the ALJ erred in relying on the single decision maker's assessment
where no medical professional subsequently affirmed the assessment); *Maynard v. Comm'r of
Soc. Sec.*, No. 11-12221, 2012 WL 5471868, at *9 n.3 (E.D. Mich. Sept. 11, 2012) ("findings
made by SDMs are *not* opinion evidence that Administrative Law Judges (ALJs) . . . should
consider and address in their decisions") (emphasis in original).

*Mitsoff v. Comm'r of Soc. Sec.*, No. 3:12cv046, 2013 WL 1098188, at *8 (S.D. Ohio March 15,

2013) (internal citations omitted); *see also Sparck v. Comm'r of Soc. Sec.*, No. 11-10521, 2012

WL 4009650, at *9 (E.D. Mich. Aug. 23, 2012) (while the ALJ reserves the right to decide a

claimant's RFC, he must rely on medical opinions to support his conclusions regarding a

claimant's mental and cognitive limitations); *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 311 (D.

Mass. 1998):

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical
> findings, and as a result an ALJ's determination of RFC without a medical
> advisor's assessment is not supported by substantial evidence. *See Rodriguez v.
> Sec'y of HHS*, 893 F.2d 401, 403 (1st Cir. 1989). Where the "medical findings in
> the record merely diagnose [the] claimant's exertional impairments and do not
> relate these diagnoses to specific residual functional capacities such as those set
> out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that
> connection himself." *Rosado v. Sec'y of HHS*, 807 F.2d 292, 292 (1st Cir. 1986).

ALJs can only make their own functional capacity determinations from the medical evidence

when a claimant's physical impairment is minor. *See Mitsoff*, 2013 WL 1098188, at *9:

> The Court recognizes there are limited occasions when the medical evidence is so
> clear, and so undisputed, that an ALJ would be justified in drawing functional
> capacity conclusions from such evidence without the assistance of a medical
> source. *See Deskin*, 605 F.Supp.2d at 912 ("To be sure, where the medical
> evidence shows relatively little physical impairment, an ALJ permissibly can
> render a commonsense judgment about functional capacity even without a
> physician's assessment").

This is not a case where the ALJ could make his own RFC determination based on the raw

medical evidence. A finding that Dr. Quines' opinion should be rejected would lead to the

conclusion that: there is no medical opinion to support the ALJ's RFC determination; the ALJ

impermissibly relied on his own interpretation of the medical data of record; and, the ALJ's RFC

determination is unsupported by substantial evidence.  If that is the case, on remand, the ALJ

should also redetermine Plaintiff's RFC.[4]

## IV.   CONCLUSION

Because the ALJ failed to apply the treating source rule, this Magistrate Judge

**RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, the

Commissioner's motion for summary judgment be **DENIED**, and the case be **REMANDED** to

the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g)

The parties to this action may object to and seek review of this Report and

Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th

Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised

that making some objections, but failing to raise others, will not preserve all the objections a

party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474

F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.

Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF)

system or, if an appropriate exception applies, through the Clerk's Office.  E.D. Mich. LR 5.1. A

copy of any objections is to be served upon this Magistrate Judge but this does not constitute

filing.  E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen

(14) days of service, and a reply brief may be filed within seven (7) days of service of the

response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon

---

[4]Because an appropriate analysis of the treating source rule could lead to the conclusion
that Plaintiff is disabled, Plaintiff's credibility argument need not be addressed.

Mark A. Randon
United States Magistrate Judge

Dated:  October 17, 2013

### Certificate of Service

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 17, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*Case Manager for Magistrate Judge Mark A. Randon*